United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DENISE A. SCHANZ,

             Plaintiff,

  v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

             Defendant

————————————————————/

No. 05-03379 MMC

**ORDER GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING DEFENDANT'S
CROSS-MOTION FOR SUMMARY
JUDGMENT**

(Docket Nos. 13, 15)

     Plaintiff Denise A. Schanz ("Schanz") brings this action pursuant to 42 U.S.C.

§ 405(g) to obtain judicial review of a final decision of the Commissioner of the Social

Security Administration ("Commissioner") that Schanz was not disabled, and thus not

entitled to disability benefits, during the period for which she seeks benefits under Title II of

the Social Security Act.  Before the Court are Schanz's motion for summary judgment or, in

the alternative, remand, filed December 12, 2005, and the Commissioner's cross-motion for

summary judgment, filed December 30, 2005. Pursuant to Civil Local Rule 16-5, the

motions have been submitted on the papers without oral argument.  The Court, having

considered the papers in support of and in opposition to the motions, hereby rules as

follows.

1

**BACKGROUND**

2        On November 25, 2002, Schanz, who was then 45 years old, filed an application for

3   disability benefits. (See Certified Transcript of Administrative Proceedings ("Tr.") at 60-63.)

4   Schanz alleged disability as a result of "5 protruding discs & pinched nerve in neck causing

5   numbness & pain in neck, right arm & hand." (See Tr. at 87.)  After Schanz's application

6   was denied initially by the Social Security Administration ("SSA"), she sought

7   reconsideration, asserting high blood pressure and depression as additional bases of

8   disability.  (See Tr. at 33.)  After her claim was denied on reconsideration, (see id.), Schanz

9   requested a hearing before an Administrative Law Judge ("ALJ").  (See Tr. at 41.)

10       On May 19, 2004, the ALJ conducted a hearing, and took testimony from Schanz,

11  Schanz's husband Leon Schanz, and a vocational expert.  (See Tr. at 314-85.)  Following

12  the hearing, the ALJ rendered a decision unfavorable to Schanz.  (See Tr. at 15-24.)

13       In that decision, filed September 24, 2004, the ALJ analyzed Schanz's application

14  under the five-step sequential evaluation process set forth in the Code of Federal

15  Regulations ("C.F.R.").[1]  At step one, the ALJ found Schanz had not engaged in substantial

16  gainful activity since February 16, 2002.  (See Tr. at 22.)  At step two, the ALJ found

17  Schanz "has cervical disc degeneration with radiculopathy into the upper right extremity,

18  obesity, hypertension controlled on medication and depressive disorder . . . ." (See Tr. at

19  22.)  Although the ALJ never expressly found the above-referenced impairments to be

20  severe, he impliedly did so, as he continued to step three in the evaluation process.  (See

21

22       [1] "The Commissioner follows a five-step sequential evaluation process in assessing
whether a claimant is disabled.

23       Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant
is found not disabled.  If not, proceed to step two.

24       Step two: Does the claimant have a "severe" impairment?  If so, proceed to step
three.  If not, then a finding of not disabled is appropriate.

25       Step three: Does the claimant's impairment or combination of impairments meet or
equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is
automatically determined disabled.  If not, proceed to step four.

26       Step four: Is the claimant capable of performing his past work?  If so, the claimant is
not disabled.  If not, proceed to step five.

27       Step five: Does the claimant have the residual functional capacity to perform any
other work?  If so, the claimant is not disabled.  If not, the claimant is disabled." McCartey

28  v. Massanari, 298 F.3d 1072, 1074 n.6 (9th Cir. 2002) (citing 20 C.F.R. § 404.1520).

2

1    Tr. at 22); <u>see</u> <u>also</u> 20 C.F.R. § 404.1520(a)(4) ("If we cannot find that you are disabled or

2    not disabled at a step, we go on to the next step."). At step three, the ALJ found Schanz

3    did not have an impairment or combination of impairments that met or equaled a listed

4    impairment. (<u>See</u> Tr. at 22-23.) At step four, the ALJ found Schanz could not perform her

5    past relevant work as a teacher's aide, a customer service representative, a cashier and

6    assistant manager for a gas station, or a seamstress. (<u>See</u> Tr. at 20-21, 23.)

7        At step five, the ALJ found Schanz had the residual functional capacity to "lift and

8    carry up to 10 lbs frequently; sit for 6 hours in an 8-hour day; stand/walk for 6 hours in an 8-

9    hour day"; "use ramps/stairs"; "crouch, crawl, climb, balance, stoop and kneel occasionally."

10   (<u>See</u> Tr. at 22.) The ALJ further found that "with her dominant right upper extremity she

11   can reach, handle, finger and feel occasionally." (<u>See</u> <u>id</u>.) Additionally, the ALJ found

12   Schanz is "precluded from heights" but "is capable of working at an average pace." (<u>See</u>

13   <u>id</u>.) The ALJ found Schanz's asserted inability to perform any work was "not entirely

14   credible," and that Schanz is capable of performing a "wide range of light work," although

15   her "nonexertional limitations do not allow her to perform the full range of light work."[2] (<u>See</u>

16   Tr. at 23.) Based on the Medical-Vocational Guidelines and the vocational expert's

17   testimony, the ALJ found there were a significant number of jobs in the national and local

18   economy that Schanz could perform and, accordingly, concluded Schanz was not disabled.

19   (<u>See</u> Tr. at 22-23.)

20       On October 11, 2004, Schanz filed a request for review of the ALJ's decision. (<u>See</u>

21   Tr. at 12-14.) On July 12, 2005, the Appeals Council denied her request for review. (<u>See</u>

22   Tr. at 5-9.) On August 19, 2005, Schanz filed the instant action for judicial review pursuant

23   to 42 U.S.C. § 405(g).

                                    **STANDARD OF REVIEW**

25       The Commissioner's determination to deny disability benefits will not be disturbed if

26

27       [2] The ALJ found Schanz "is mildly-moderately limited in social functioning, ADLs
28   [activities of daily living], and in concentration, persistence, or pace due to the combined
     effects of her secondary depression, pain, and medication." (<u>See</u> Tr. at 22.)

1   it is supported by substantial evidence and based on the application of correct legal

2   standards.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Substantial

3   evidence has been defined as "more than a mere scintilla, but less than a preponderance; it

4   is such relevant evidence as a reasonable mind might accept as adequate to support a

5   conclusion."  See De la Fuente v. F.D.I.C., 332 F.3d 1208, 1220 (9th Cir. 2003) (internal

6   quotation and citation omitted).  The reviewing court must consider the administrative

7   record as a whole and weigh the evidence both supporting and detracting from the ALJ's

8   decision.  See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  If the evidence is

9   susceptible to more than one rational interpretation, the reviewing court will uphold the

10  decision of the ALJ.  See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

11                              **DISCUSSION**

12          In her motion for summary judgment, Schanz argues that the ALJ's decision should

13  be reversed and benefits awarded, or in the alternative, that the action be remanded for

14  further proceedings.  Specifically, Schanz asserts, the ALJ erred by: (1) failing to discuss all

15  impairments of record; (2) rejecting the opinions of Schanz's treating and examining

16  physicians; (3) discounting Schanz's subjective pain testimony and the corroborating

17  testimony of Schanz's husband; and (4) failing to adequately demonstrate that Schanz has

18  the residual functional capacity to perform a wide range of light work.

19          **A. ALJ's Review of Claimant's Impairments**

20          Schanz argues that the ALJ failed to find several impairments at step two of the

21  evaluation process, and that the ALJ failed to take all of her impairments into consideration

22  when making his equivalence evaluation at step three.  In particular, Schanz argues that

23  the ALJ did not address the following asserted impairments: "post right wrist carpal release

24  surgery"; "post right tennis elbow surgery"; degenerative disc disease of the lower back;

25  high cholesterol and triglycerides; asthma and allergic rhinitis; gastroesophageal reflux

26  disease ("GERD"); and the effect of an abusive relationship with her father and husband on

27  her depression.  (See Plaintiff's Motion at 12.)

28          At step two of the evaluation process, a "severe impairment" is one that significantly

4

1    limits the claimant's physical or mental ability to perform basic work activities.  See
2    20 C.F.R. § 404.1520(c).  "In Social Security cases the ALJ has a duty to fully and fairly
3    develop the record and to assure that the claimant's interests are considered."  Brown v.
4    Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  The burden, however, is on the claimant to
5    show that an impairment is severe.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir.
6    1999).

7           In the instant case, Schanz makes no attempt to explain how the impairments she
8    asserts the ALJ failed to discuss significantly limit her ability to perform basic work
9    activities.  Nor is there any evidence in the medical record to suggest these impairments
10   placed any significant limitation on her ability to perform basic work activities.

11          Although the ALJ did not discuss the effects of Schanz's right wrist carpal tunnel
12   surgery, right tennis elbow surgery, asthma, allergic rhinitis, or GERD,[3] neither did any of
13   the physicians who opined as to Schanz's work-related abilities.  (See, e.g., Tr. at 179-193,
14   221-223, 233-244.)  It is not enough for Schanz simply to name impairments and fault the
15   ALJ for not considering them; it is her burden to adduce evidence as to why these
16   impairments significantly limit her ability to perform work-related activities.  See Tackett v.
17   Apfel, 180 F.3d at 1098.

18          As noted, the ALJ specifically found Schanz to have several impairments.  (See Tr.
19   At 22) ("The medical evidence establishes the claimant has cervical disc degeneration with
20   radiculopathy into the upper right extremity, obesity, hypertension controlled on medication,
21   and depressive disorder . . . .")  Although, as Schanz points out, the ALJ did not expressly
22   find any of these impairments to be severe, such finding is implicit in his proceeding to the
23   next step in the evaluation process.  Further, the ALJ's finding that Schanz's "additional
24   nonexertional limitations do not allow her to perform the full range of light work," reflects his
25   consideration of the effect of Schanz's obesity and depression on her ability to perform
26   work-related activities.  (See Tr. at 23.)

27

28          [3]GERD is an acronym for gastroesophageal reflux disease.

5

1    Accordingly, Schanz has not demonstrated the ALJ erred in his determination of

2    Schanz's severe impairments at step two of the evaluation process.[4]

3              **B. Opinions of Treating and Examining Physicians**

4    Schanz argues the ALJ erred by rejecting the opinions of her treating physician Julie

5    Winter, M.D. ("Dr. Winter") in favor of the opinions of Joey English, M.D. ("Dr. English"), an

6    examining physician, and Mark Tambellini, M.D. ("Dr. Tambellini"), a non-treating, non-

7    examining physician, in determining the severity of Schanz's impairments.  Schanz further

8    argues the ALJ erred by crediting the opinion of Dr. Tambellini over that of Dr. English with

9    respect to Schanz's ability to walk and stand during the course of an eight-hour workday.

10              **1. Dr. Winter**

11    Dr. Winter has been Schanz's treating physician since January 2000.  (See Tr. at

12    89.)  From October 2001 to December 2003, Dr. Winter saw Schanz at least eight times.

13    (See Tr. at 195-207, 209-10, 241-44.)  Dr. Winter assessed Schanz as having chronic neck

14    pain and radiculopathy.  (See Tr. at 198, 203, 207, 210.)

15    On December 8, 2003, Dr. Winter prepared a medical assessment of Schanz's

16    ability to perform work-related activities.  (See Tr. at 241.)  Dr. Winter concluded that

17    Schanz was not able to lift or carry more than five pounds on an occasional basis.  (See Tr.

18    at 241.)  Dr. Winter further concluded that Schanz could not sit for more than two hours in

19    an eight-hour day because her arm and neck would start throbbing; that she tilted her head

20    to the side most of the time, which affected her ability to stand and walk; and that she was

21    in pain all of the time.  (See Tr. at 242, 244.)  Dr. Winter found Schanz could not kneel,

22    crouch, bend at the waist or crawl for any significant length of time, and that Schanz's

23    ability to reach, handle, feel, and push/pull were all affected by her impairment because

24    they caused increased neck pain.  (See Tr. at 242-43.)  Dr. Winter stated that Schanz could

25

26         [4] In light of the above ruling, the Court does not address plaintiff's argument that the
27    ALJ's errors at step two led to an improper evaluation at step three.  The Court finds no
      evidence in the record, nor does plaintiff point to any, that the ALJ erred in determining that
28    plaintiff had no impairment or combination of impairments listed in or equivalent to those
      listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.

1   only use her right hand, fingers and arms for a maximum of two hours per working day and

2   her left hand, fingers and arm for four hours per working day.[5]  (See Tr. at 243.)  When

3   asked to indicate the medical findings that supported these assessments, Dr. Winter

4   repeatedly stated, "see MRI report."  (See Tr. at 242-44.)  The MRI to which Dr. Winter

5   referred was taken on November 11, 2001 and was read by N. Yeung, M.D. ("Dr. Yeung")

6   to reveal a "right C5-6 lateral HNP [herniated nucleus pulposus] with secondary right-sided

7   neural foraminal stenosis."  (See Tr. at 217.)

8                    **2. Dr. English**

9           On March 7, 2003, Schanz received a comprehensive neurological examination from

10  Dr. English.[6]  (See Tr. at 179.)  After performing a series of range of motion tests,

11  Dr. English diagnosed Schanz with "chronic right C6 radiculopathy."  (See Tr. at 182-183.)

12  Dr. English stated that "[o]bjectively on examination, [Schanz] has normal range of motion

13  of the cervical spine, but with a clear increase in her pain with both passive and active

14  range of motion testing."  (See Tr. at 184.)  Based upon these findings, Dr. English opined

15  that Schanz should be able to stand for approximately two hours and sit for approximately

16  six hours in an eight hour day.  (See Tr. at 184.)  Dr. English further opined that "it would be

17  reasonable to limit" Schanz to lifting and/or carrying 20 pounds occasionally and 10 pounds

18  frequently, "given her difficulty with neck extension and her convincing radicular pain."

19  (See Tr. at 184.)  Dr. English also stated that Schanz should be limited to only occasional

20  bending, stooping, crouching, kneeling, crawling, reaching, or feeling.  (See Tr. at 184.)

21

22

23

24       [5] The medical assessment form used by Dr. Winter requested that she fill in a blank
     indicating the percentage of an eight-hour workday the claimant could use her right and left
25   hands, fingers and arms.  (See Tr. at 243.)  Dr. Winter wrote "max 2°" for the right hand,
     fingers and arm and "max 4°" for the left hand, fingers and arm, (see id.), which the parties
26   interpret to mean two percent and four percent, respectively.  The Court notes, however,
     that Dr. Winter has used the (°) symbol in other documents to refer to hours, not
27   percentages.  (See Tr. at 197 ("[Claimant] not sleeping due to pain, sleeps 2° then up."))

28       [6] The record does not indicate whether Dr. English was retained by Schanz or by the
     SSA.

7

### 3. Dr. Tambellini

On March 20, 2003, Dr. Tambellini completed a "Physical Residual Functional Capacity Assessment" of Schanz, based on his review of the medical record.[7]  (See Tr. at 185.)  Dr. Tambellini concluded that Schanz could lift 20 pounds occasionally and 10 pounds frequently, and that she was capable of walking and standing six hours in an eight-hour day.  (See Tr. at 191.)  Dr. Tambellini limited Schanz's use of her right arm to occasional reaching, handling, fingering and feeling, but placed no restrictions on use of her left arm.  (See Tr. at 188.)

### 4. Application of Treating Physician Rule

As discussed above, the opinion of Dr. Winter conflicts with those of Drs. English and Tambellini with respect to Schanz's ability to perform work-related functions.  The ALJ explicitly rejected the opinion of Dr. Winter while implicitly adopting the opinions of Drs. English and Tambellini.  (See Tr. at 19-20, 22.)

Generally, the opinion of a treating physician is given greater weight than opinions of non-treating physicians because a treating physician has a greater opportunity to know and observe the patient.  See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Where the treating physician's opinion contradicts the opinion of an examining or consulting physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record" for rejecting the treating physician's opinion.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).)  When the nontreating physician's opinion rests on "independent clinical findings that differ from the findings of the treating physician," however, the rule established by Murray is inapplicable, because such opinion itself constitutes substantial evidence.  See Magallanes, 881 F.2d at 751; see also Tonapetyan, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding non-treating physician's opinion "alone constitute[d] substantial evidence, because it rest[ed] on his own independent examination" of claimant).  Under such circumstances,

---

[7] The ALJ refers to Dr. Tambellini as a "state agency medical consultant."  (See Tr. at 19.)

8

1   the ALJ is required only to resolve the conflict between the treating and nontreating

2   physicians and give good reasons for the weight given to the treating physician's opinion.

3   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); see also 20 C.F.R.

4   § 404.1527(d)(2).

5           In the instant case, the opinion of Dr. English, an examining physician, constitutes

6   substantial evidence because it was based on range-of-motion testing and independent

7   clinical findings derived therefrom.  (See Tr. at 182.)  There is no evidence that Dr. Winter

8   performed or relied on similar tests in her assessment of Schanz's work-related abilities.

9   (See Tr. at 241-244.)  An ALJ is entitled to weigh conflicting medical evidence and to credit

10  the opinion of one doctor over another, provided his decision is supported by substantial

11  evidence.  See Andrews v. Shalala, 53 F.3d at 1041.  Here, however, the ALJ's decision

12  does not indicate the ALJ in fact weighed the opinion of Dr. English against the opinion of

13  Dr. Winter.

14          The ALJ's discussion of Dr. Winter's findings consists of the following paragraph:

15          In December, 2003 the claimant was evaluated by Dr. Winter.  He
            opined the claimant could not lift or carry more than 5 pounds and could
16          not sit longer than 2 hours in an 8-hour workday. He precluded her from
            kneeling, crouching, bending at the waist and crawling. He restricted her
17          to very little climbing or stooping. He opined she had very limited ability to
            manipulate her hands for grasping, torquing, twisting and fine finger
18          manipulation. He placed restrictions on both the left and right upper
            extremities despite the fact the claimant complained only of pain and
19          numbness in the right hand and arm. Dr. Winter's findings are rejected.
            They are not supported by the objective medical evidence and are far more
20          restrictive than necessary. He did not discuss objective findings that support
            his conclusions and the conclusions appear based on the claimant's
21          subjective complaints. He placed limitations on the use of the left upper
            extremity but the claimant did not allege any impairment of the left upper
22          extremity.

23  (See Tr. at 19-20 (internal citations omitted).)

24          Further, although the ALJ stated Dr. Winter's findings are "not supported by the

25  objective medical evidence" and "appear based on the claimant's subjective complaints,"

26  (see Tr. at 20), Dr. Winter's opinion was expressly based in part on the results of an MRI,

27  which, as noted, revealed that Schanz had a right C5-6 lateral herniated nucleus pulposus

28  with secondary right-sided neural foraminal stenosis.  (See Tr. at 242-244.)  The ALJ found

9

1   Schanz was impaired due to cervical disc degeneration with radiculopathy in the right upper

2   extremity.  (See Tr. at 21.)  The ALJ does not explain why Dr. Winter's reliance on the

3   above-referenced MRI does not constitute objective evidence in support of Dr. Winter's

4   findings; he does not state, for example, that the condition shown in the MRI is unlikely to

5   cause the claimed level of impairment, and, in rejecting Dr. Winter's opinion, does not even

6   mention, much less rely upon, the range of motion tests conducted by Dr. English.

7       Accordingly, the Court finds the ALJ did not meet his burden of weighing the

8   conflicting evidence and providing sufficient reasons for rejecting the opinion of Dr. Winter.

9                      **5. Application of Examining Physician Rule**

10      As discussed above, the opinions of Dr. English and Dr. Tambellini are in conflict.

11  Dr. English, after performing a comprehensive neurological examination, opined that

12  Schanz should be able to stand for approximately two hours in an eight-hour workday.

13  (See Tr. at 184.)  Based solely upon a review of Schanz's medical records, Dr. Tambellini

14  opined that Schanz was capable of walking and standing for six hours in an eight-hour day.

15  (See Tr. at 191.)  The ALJ, without expressly crediting the opinion of Dr. Tambellini or

16  rejecting the opinion of Dr. English, found Schanz was capable of standing and walking for

17  six hours in an eight-hour workday.  (See Tr. at 22.)

18      "The opinion of an examining physician is . . . entitled to greater weight than the

19  opinion of a nonexamining physician."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

20  If the opinion of an examining physician conflicts with that of a nonexamining physician, the

21  ALJ may reject the examining physician's opinion only for specific and legitimate reasons

22  that are supported by substantial evidence in the record.  See id. at 830-31; see also

23  Andrews, 53 F.3d at 1043 (finding ALJ "met his burden of giving specific, legitimate

24  reasons based on substantial evidence for rejecting the examining physician's opinion . . .

25  in favor of the nonexamining expert's opinion").

26      Here, the ALJ's entire discussion of Dr. Tambellini's findings consists of the following

27  sentence: "In a March 2003 residual functional capacity assessment the state agency

28  medical consultant [Dr. Tambellini] also concluded that the claimant was capable of

10

1  performing light work despite complaints of chronic neck and right arm pain." (See Tr. at

2  19.)  The ALJ did not mention Dr. Tambellini's findings as to Schanz's ability to stand and

3  walk, although the ALJ apparently credited those findings when assessing Schanz's

4  functional capacity.  The ALJ gave no reason for crediting the opinion of Dr. Tambellini over

5  that of Dr. English.

6      Accordingly, the Court finds the ALJ did not meet his burden of providing specific

7  and legitimate reasons for crediting the opinion of the non-examining physician, Dr.

8  Tambellini, over that of the examining physician, Dr. English.

9                         **6. Other Treating Physicians**

10     Schanz argues the ALJ erred by failing to properly evaluate the opinions of Schanz's

11  other treating physicians.

12     Other than Dr. Winter, the only treating physician who opined as to Schanz's ability

13  to perform work-related activities was Harinder S. Auluck, M.D. ("Dr. Auluck"), who

14  performed a psychiatric evaluation of Schanz.  (See Tr. at 221.)  Dr. Auluck found Schanz's

15  concentration to be "fair to patchy" and that "she is likely to experience some difficulty

16  maintaining persistence and pace at times." (See Tr. at 223.)  Dr. Auluck further found

17  Schanz is able to remember and carry out only simple instructions and that her ability to

18  interact effectively with coworkers, supervisors and members of the public is "minimally

19  compromised."  (See id.)  Dr. Auluck opined, however, that, from a psychiatric point of

20  view, "there is no reason why [Schanz] should not be able to maintain an eight hour

21  workday or a forty hour work week (sic)."  (See id.)  The ALJ discussed Dr. Auluck's

22  findings at length, and Dr. Auluck's opinion is not contradicted by any other evidence in the

23  medical records.  (See Tr. at 20.)

24     Accordingly, Schanz has not demonstrated the ALJ erred in evaluating the opinions

25  of Schanz's other treating physicians.

26              **C. Credibility of Schanz's Subjective Complaints of Pain**

27     Schanz argues the ALJ erred by finding Schanz's testimony was not credible to the

28  extent she claimed pain prevented her from working.  The ALJ found Schanz's allegations

1    "appear overstated" and that the "treatment records and the consultative examination do

2    not reflect the severe symptoms claimed." (See Tr. at 22.)  The ALJ further found Schanz's

3    testimony "not entirely credible to the extent she alleged an inability to perform any work."

4    (See Tr. at 23.)

5        Schanz testified before the ALJ that since January 2000, she gets pain in her neck

6    and arm "all the time" and that her pain prevents her from working.  (See Tr. at 333.)

7    Schanz also testified she has trouble picking up objects because she doesn't have feeling

8    in her right hand.  (See Tr. at 338.)  Schanz testified she cannot sleep for more than two

9    and a half hours at a time, due to discomfort, and, consequently, has to take naps in the

10   morning and afternoon.  (See Tr. at 343.)  Schanz further testified she no longer is able to

11   vacuum, wash, or scrub the floors; she cannot pull wet clothes out of the laundry because

12   "it's just too much pull"; and she can "[w]ash a few dishes," but cannot prepare a meal from

13   start to finish because she "cannot stand at the stove that long to do it." (See Tr. at 354.)

14       After Schanz received two cervical epidural injections, she reported they failed to

15   provide any relief for her pain.  (See Tr. 157, 161, 165.)  At the hearing before the ALJ,

16   Schanz testified she uses an icepack on the back of her neck and takes Flexoral, Vicodin,

17   and Motrin for pain relief.  (See Tr. at 340.)  She testified she went to physical therapy for

18   three months, but stopped going after the physical therapist determined the therapy was

19   not providing any relief.  (See Tr. at 341.)  Schanz further testified she wears a neck brace

20   at least twice a day for thirty minutes at a time to help relieve the pressure on her neck.

21   (See Tr. at 349.)

22       Schanz's medical records reveal that on at least sixteen separate occasions

23   between January 2000 and July 2004, she complained of pain in her neck and arm to

24   seven different physicians.  (See Tr. at 156, 159, 165-66, 179, 195, 197, 202, 204, 206,

25   208-09, 213, 221, 241, 301.)

26       A claimant who alleges disability based on subjective symptoms, such as pain, must

27   meet two requirements:  "(1) she must produce objective medical evidence of an

28   impairment or impairments; and (2) she must show that the impairment or combination of

12

1    impairments <u>could reasonably be expected to</u> (not that it did in fact) produce some degree

2    of symptom." <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (emphasis in

3    original); <u>see</u> <u>also</u> <u>Cotton v. Bowen</u>, 799 F.3d 1403 (9th Cir. 1986). "The claimant need not

4    produce objective medical evidence of the pain or fatigue itself, or the severity thereof."

5    <u>See</u> <u>Smolen</u>, 80 F.3d at 1282. Additionally, "the claimant need not show that her

6    impairment could reasonably be expected to cause the severity of the symptom she has

7    alleged"; as noted, she need only show it could reasonably have caused "some degree" of

8    the symptom. <u>See</u> <u>id</u>. "This approach reflects the highly subjective and idiosyncratic

9    nature of pain and other such symptoms." <u>Id</u>.

10        If the claimant meets the above-referenced requirements, and there is no evidence

11   of malingering, the ALJ can reject the claimant's testimony as to the severity of her

12   symptoms only by offering specific, clear and convincing reasons for doing so. <u>See</u>

13   <u>Smolen</u>, 80 F.3d at 1281. In assessing the claimant's credibility, the ALJ "may consider,"

14   among other things, an unexplained or inadequately explained failure to seek treatment or

15   to follow a prescribed course of treatment. <u>See</u> <u>id</u>. at 1284. The ALJ "must . . . consider"

16   the credibility factors set out in SSR 88-13, which include the claimant's work record as well

17   as observations by treating and examining physicians and other third parties regarding: (1)

18   the nature, onset, duration, and frequency of the claimant's symptom; (2) precipitating and

19   aggravating factors; (3) the type, dosage, effectiveness, and adverse side effects of any

20   pain medication; (4) treatment, other than medication, for pain relief; (5) functional

21   restrictions caused by the symptoms; and (6) the claimant's daily activities. <u>See</u> <u>id</u>.; SSR

22   88-13.

23        In the instant case, the ALJ found "the medical evidence established [Schanz] has

24   cervical disc degeneration with radiculopathy into the upper right extremity," (<u>see</u> Tr. at 22),

25   and acknowledged that Schanz has been treated for pain associated with that condition,

26   (<u>see</u> Tr. at 18-20.) Because the ALJ did not find Schanz is malingering, and there is no

27   evidence in the record demonstrating she is malingering, the burden shifted to the ALJ to

28   provide specific, clear, and convincing reasons for rejecting Schanz's testimony as to the

13

1    extent of her pain.  See Smolen, 80 F.3d at 1281.

2         The ALJ's discussion of Schanz's complaints of pain consists of the following:

3         The extent of her allegations at the hearing was not supported by medical
          evidence.  She alleged an inability to perform any work.  However, orthopedic
4         and neurological findings were minimal throughout the record.  Most
          physicians found her capable of performing a wide range of light work.  The
5         testimony of her husband was consistent with her testimony but also appears
          exaggerated in light of the objective findings. The claimant  has not
6         undergone significant medical treatment.  She has not attended a pain clinic
          and has not undergone other treatment to relive pain such as chiropractic
7         manipulation.  She has not sought significant mental health treatment.  The
          allegations of the claimant appear overstated.  The treatment records and the
8         consultative evaluations do not reflect the severe symptoms claimed.

9    (See Tr. at 21-22.)  In essence, the ALJ based his assessment of Schanz's credibility on a

10   determination that:  (1) the objective medical records did not support Schanz's testimony as

11   to the degree of her pain and (2) Schanz's pursuit of conservative medical treatment

12   indicated her pain was not as severe as she claimed.

13        Schanz was examined by seven different physicians over a period of four years; all

14   of the physicians noted that Schanz suffered pain in her neck and/or right arm.  (See Tr. at

15   156, 159, 165-66, 179, 195, 197, 202, 204, 206, 208-09, 213, 221, 241, 301.)  Dr. English,

16   the only examining physician who opined that Schanz was physically capable of performing

17   light work, stated "the claimant has a normal range of motion of the cervical spine, but with

18   a clear increase in her pain with both passive and active range of motion testing."  (See Tr.

19   at 184.)  Dr. English described Schanz's "radicular pain" as "convincing."  (See id.)  In Dr.

20   Winter's opinion, the MRI was consistent with Schanz's complaint that her pain is

21   sufficiently severe to "constantly" interfere with attention and concentration.  (See Tr. at

22   244.)  Although one doctor, Kamran Sahrakar, M.D. ("Dr. Sahrakar"), told Schanz "her pain

23   is not typical for C5-6 pain," he also told Schanz "her disc herniation . . . may be

24   responsible for some of her tingling and pain in the right upper extremity."  (See id. at 208.)

25   No physician who examined Schanz disputed that her impairment might cause pain, and no

26   physician questioned that Schanz was suffering the amount of pain she reported.

27        As noted, the ALJ further found Schanz's testimony as to her pain lacked credibility

28   because Schanz "has undergone only conservative medical treatment."  (See Tr. at 21.)

                                                    14

1   As discussed above, however, no physician questioned Schanz's reported amount of pain.

2   Additionally, despite his acknowledgment that Schanz received two cervical epidural

3   injections and takes Vicodin for pain relief,[8] (see Tr. at 21), the ALJ nonetheless found

4   Schanz had not received "significant" medical treatment," (see id.).  Moreover, the record

5   reflects that Dr. Sahrakar discussed with Schanz the possibility of disc fusion surgery, but

6   told her "there are implications with respect to fusing a joint in the neck causing future

7   difficulties and long-term implications of the operation as well as short-term difficulties,

8   especially in light of her weight."  (See Tr. at 208.)

9           Accordingly, the Court finds the ALJ has not set forth sufficient reasons for rejecting

10  Schanz's testimony as to the extent of her pain.

11          The ALJ found "the testimony of [Schanz's] husband was consistent with her

12  testimony but also appeared exaggerated in light of the objective findings."  (See Tr. at 21.)

13  Lay witness testimony can be an important source of information about a claimant's

14  impairments, and an ALJ can reject it "only by giving specific reasons germane to each

15  witness."  See Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999).   As

16  noted above, the ALJ failed to set forth clear and convincing reasons for rejecting Schanz's

17  testimony.  The ALJ provided no additional reasons for rejecting the corroborating

18  testimony of Schanz's husband.

19          Accordingly, the ALJ has not set forth sufficient reasons for rejecting the testimony of

20  Schanz's husband.

21          **D. Schanz's Residual Functional Capacity**

22          Schanz argues the ALJ erred in determining that Schanz can perform jobs that exist

23  in significant numbers in the national economy.

24          "Once a claimant has established that he or she suffers from a severe impairment

25  that prevents the claimant from doing any work he or she has done in the past, the claimant

26  has made a prima facie showing of disability . . . [and] the burden shifts to the

27  _____

28          [8]Vicodin, or hydrocodone, is an opioid and Schedule II controlled substance under
    the Controlled Substance Act.

1   Commissioner to show that the claimant can perform some other work that exists in

2   'significant numbers' in the national economy, taking into consideration the claimant's

3   residual functional capacity, age, education, and work experience."  Tackett v. Apfel,

4   180 F.3d at 1100; 20 C.F.R. § 404.1560(b)(3).  The Commissioner may meet this burden in

5   either of two ways: (1) by the testimony of a vocational expert or (2) by reference to the

6   Medical-Vocational Guidelines ("the grids").  See Tackett, 180 F.3d at 1101; 20 C.F.R. Pt.

7   404, Subpt. P, App. 2.

8        The Commissioner may use the grids alone only "where they completely and

9   accurately represent a claimant's limitations," in other words, where a claimant is "able to

10  perform the full range of jobs in a given category, i.e., sedentary work, light work, or

11  medium work."  See id. (emphasis in original).  Where the grids do not completely and

12  accurately describe a claimant's limitations, the ALJ also must hear testimony from a

13  vocational expert.  See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

14  Moreover, because the grids are based solely on "strength factors," they are "sufficient only

15  when a claimant suffers only from exertional limitations."  See id.

16       In the instant case, the ALJ concluded that Schanz was able to perform a "wide

17  range of light work," with limitations of occasional crouching, climbing, balancing, stooping

18  and kneeling.  (See Tr. at 22-23.)  The ALJ further found Schanz is "mildly-moderately

19  limited in social functioning, ADLs, and in concentration, persistence, or pace due to the

20  combined effects of her secondary depression, pain, and medication,"  (see id. at 22), and

21  that such "nonexertional limitations do not allow her to perform the full range of light work,"

22  (see id. at 23); see also SSR 96-9p, 1996WL 374186 at *5.

23       Because the Grids do not completely and accurately describe Schanz's limitations,

24  the ALJ turned to the testimony of a vocational expert to determine whether jobs exist in the

25  national economy for an individual of Schanz's age, education, past relevant work

26  experience and residual functional capacity.  (See Tr. at 22-23.)  The hypothetical posed by

27  the ALJ asked the vocational expert to "assume a capacity with a lifting and carrying

28  maximum of 10 pounds at any time, . . . sitting accumulative (sic) total of 6 hours out of an

16

1    8-hour day, standing and walking accumulatively, 6 out of 8, no heights." (See Tr. at 367-

2    68.)  The ALJ further asked the vocational expert to assume Schanz was capable of only

3    occasional "reaching, handling, fingering, and feeling" with her right arm, and that she has

4    "no greater than average production pace." (See Tr. at 368.)  After considering the

5    testimony of the vocational expert, the ALJ found Schanz could work as a gate guard, a

6    counter clerk, or as a children's attendant. (See Tr. at 22.)

7         Contrary to the hypothetical posed to the vocational expert, Dr. Winter concluded

8    Schanz is limited to carrying a maximum of five pounds and to sitting a maximum of two

9    hours in an eight-hour day. (See Tr. at 241-242.)  Dr. English concluded Schanz was

10   limited to standing no more than two hours out of an eight-hour day. (See Tr. at 184.)

11   Schanz testified that constant pain in her neck and arm prevent her from working and force

12   her to take frequent naps during the day. (See Tr. at 333, 344.)  As discussed above, the

13   Court has found the ALJ failed to adequately explain his reasons for rejecting the opinions

14   of Dr. Winter and Dr. English on these issues, as well as Schanz's subjective pain

15   complaints.

16        Accordingly, the Court finds the hypothetical posed to the vocational expert does not

17   provide adequate support for the ALJ's determination that Schanz can perform work that

18   exists in significant numbers in the national economy.

19        **E. Form of Relief**

20        Where the ALJ has improperly rejected relevant evidence, the Ninth Circuit has, on

21   occasion, declined to "remand solely to allow the ALJ to make specific findings" regarding

22   that evidence, and instead has credited the improperly rejected evidence as true and

23   remanded solely for an award of benefits. See Lester, 81 F.3d at 834 (internal quotation

24   and citation omitted); see also Smolen, 80 F.3d at 1292 (holding court may remand for

25   award of benefits "where the record has been fully developed and where further

26   administrative proceedings would serve no useful purpose").  In other such instances,

27   however, the Ninth Circuit has remanded for further proceedings rather than for an award

28   of benefits. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (stating: "We are

17

1   not convinced that the 'crediting as true' doctrine is mandatory in the Ninth Circuit";

2   discussing cases; remanding for reconsideration of claimant's pain testimony); see also

3   Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (remanding for reconsideration

4   where, inter alia, ALJ "failed to provide adequate reasons for rejecting the opinion of the

5   treating physicians" and "did not properly reject [the claimant's] subjective complaints").  In

6   particular, those courts have remanded for further proceedings when "outstanding issues

7   must be resolved before a proper determination can be made."  See id. at 1115.

8       Here, "outstanding issues" remain to be resolved.  In particular, issues remain as to

9   whether sufficient reasons exist for the ALJ's rejection of the opinions of Dr. Winter and

10  Dr. English and Schanz's subjective pain testimony.  Development of these issues will

11  affect the ALJ's determination as to whether Schanz can perform jobs existing in significant

12  numbers in the national economy.

13      Accordingly, the Court cannot find that "the record has been fully developed" or that

14  "further administrative proceedings would serve no useful purpose."  See Smolen, 80 F.3d

15  at 1292.  Consequently, the Court will remand the action for further administrative

16  proceedings.

17                                    **CONCLUSION**

18      For the reasons set forth above, Schanz's motion for summary judgment is hereby

19  GRANTED in part, defendant's cross-motion for summary judgment is DENIED, and the

20  matter is REMANDED for further proceedings consistent with this decision.

21      The Clerk shall close the file.

22      **IT IS SO ORDERED.**

23  Dated: June 15, 2006

                                    _____
24                                  MAXINE M. CHESNEY
                                    United States District Judge

18